IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNN ROGERS, ) | |
| ) | Civil Action No. 3:22-cv-174 |
| Plaintiff, ) | |
| ) | District Judge Christy Criswell Wiegand |
| v. ) | Magistrate Judge Kezia O. L. Taylor |
| ) | |
| UPMC ALTOONA d/b/a UPMC ) | |
| ALTOONA FAMILY PHYSICIANS, and ) | ECF No. 26 |
| DONALD BECKSTEAD, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that Defendants' Motion to Dismiss be granted in part and denied in part. Specifically, it is recommended that the Motion be GRANTED as to the Retaliation Claim and DENIED as to the Equal Pay Act Claim, the Gender Discrimination Claim, and the Hostile Work Environment Claim. In addition, to the extent that Defendants have moved to strike parts of the Amended Complaint, we recommend that request be DENIED.

**II.   REPORT**

   **A. Procedural History**

Plaintiff Lynn Rogers ("Plaintiff") filed an amended complaint on February 6, 2023, against her former employers, Defendant UPMC Altoona ("UPMC") and Defendant Donald Beckstead ("Beckstead"), claiming that they subjected her to discrimination, hostile work environment, and retaliation based on her gender in violation of Title VII of the Civil Rights Act of 1964, as amended; that UPMC Altoona paid her unequally on the basis of Plaintiff's gender in violation of the U.S. Equal Pay Act of 1963; and violations of the Pennsylvania Human Relations

Act.  Defendants filed a Motion to Dismiss, Plaintiff submitted her Opposition, and Defendants filed an allowed Reply Brief.  ECF Nos. 27, 31, 32-2.  Defendants' Motion to Dismiss is now ripe for review.

### B. Factual Allegations

Because we write primarily for the parties who are familiar with this case, in this section, we only briefly recite the facts.  Plaintiff is a woman who began working with UPMC in December 2010.  In 2014, she was hired to work as a Behavioral Science Faculty member with Defendant UPMC Altoona Family Physicians, reporting to Beckstead, a UPMC employee. ECF No. 24 ¶¶ 7, 11 – 15.  She is a member of a protected class and qualified for the position. ECF No. 24 ¶¶ 7, 17-18.  Each year from June 2015 through June 2019, skits were presented at an annual luncheon portraying women in a degrading, demeaning, and harassing manner. *Id.* ¶¶ 19, 20, 21.  Though numerous female residents and Plaintiff complained to her superiors, including to Beckstead, *id.* ¶¶ 25, 27, Defendants allowed the skits to continue, condoning them, laughing at them, and showing that Defendants did not respect women. *Id.* ¶¶ 28, 29.  In 2017, Defendants hired a male Behavioral Science Faculty member, James Mercuri, who, as Plaintiff learned in 2018, had substantially the same employment duties and responsibilities, the same degree and licensure, and a similar number of people reporting to him, as did Plaintiff; Plaintiff, however, had more experience than Mercuri.  *Id.* ¶¶ 30, 31, 32.  Plaintiff discovered that Mercuri's starting salary was $80,000, significantly higher than her $60,000 salary, though she was more experienced. *Id.* ¶¶ 30 – 33.  Though she pursued the pay disparity with HR and with Beckstead, neither provided a satisfactory explanation.  *Id.* ¶ 33 – 38.  Beckstead, rather, sought to pacify her so that she would stop complaining.  *Id.* ¶¶ 39, 40.

At least until 2022, problematic episodes at the workplace continued, including: remarks such as Beckstead's public remark, after his assertion that women do not act to solve problems but are typically overemotional and ruminate, "Oops, I forgot that the hashtag #MeToo police is in the room;" *id*. ¶¶ 42-43, Beckstead's mocking a patient as young and stupid for becoming pregnant from a sexual assault, *id*. ¶ 92, Beckstead's 2021 joke about "one-night stands," *id*. ¶ 141, Beckstead and Joseph Hines, the Associate Program Director, referring to women who reported sexual harassment as "a Lipka" or "Lipka-esque" (after a woman medical resident who reported harassment at the workplace), *id*. ¶¶ 79-80; women employees' fear of reporting sexual harassment, *id*. ¶ 89; a menstrual pad covered in ketchup being placed in the office, *id*. ¶ 85; Beckstead's persistent failure to address the complaints presented to him about the hostile work environment, *id*. ¶¶ 102, 107-8; a supervisor's joke about "one-night stands," *id*. ¶ 141, and derision directed at Plaintiff for hosting an antidiscrimination event. *Id*. ¶¶ 162-165, 167. Plaintiff was also assigned additional responsibilities after engaging in protected activity, *id*. ¶ 61-67 and was removed from a faculty retreat. *Id*. ¶¶ 114-117.

Throughout all of this, Plaintiff complained to Beckstead and reached out to HR. As but one example, Plaintiff continued to email Beckstead about the pay disparity between herself and Mercuri, but Beckstead ignored them and did not approach HR, *id*. ¶¶ 35, 46, even when Plaintiff confronted him in person. *Id*. ¶¶ 47, 48. In 2019, Plaintiff formally asked to initiate a Job Evaluation Request ("JER") and Beckstead informed Plaintiff that he would speak to the Altoona CEO about it, but never did. *Id*. ¶¶ 49 – 52. Plaintiff continued to get the runaround from Beckstead regarding the JER, a potential denial, and whether the matter had been raised with HR, *id*. ¶¶ 39, 40, and the refusal to address the issue was in order to continue Defendants'

discriminatory practices. *Id*. ¶ 57. HR did not contact Plaintiff during 2019, leading her to conclude that Beckstead had not reported her complaint. *Id*. ¶¶ 59. In 2018 after the Program Coordinator ("PC") left UPMC, in retaliation for her complaints, Beckstead required Plaintiff to do the PC's job as well as her own for several months without additional compensation. *Id*. ¶¶ 60 – 68.

Plaintiff found the described discriminatory acts "degrading, demeaning, and harassing," ECF 24 ¶ 21, was "extremely upset," *id.* ¶ 25, and suffered by being paid less unfairly, *id.* ¶ 33-34, 37-38. All of this contributed to Plaintiff suffering from exhaustion, *id.* ¶ 21, having to work long hours to keep up with the extra duties that had been put upon her, and functioning on little sleep. *Id*. ¶¶ 69-70. She sought out a therapist who found that she had been traumatized and exhausted by Defendants' actions and recommended that she leave her position, though she remained, in part because she was the sole support of herself and her children. *Id*. ¶¶ 71-73.

### C. Legal Standards

#### 1. Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering a motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). Expounding on the *Twombly* and *Iqbal* line of cases, the Third Circuit has articulated this three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### 2. Fed. R. Civ. P. 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f). Immaterial allegations have no essential or important relationship to the claim for relief or the defenses being pleaded. *Conklin v. Anthou*, 2011 WL 1303299, at* 1 (M.D. Pa. Apr. 5, 2011). Impertinent allegations consist of "statements that do not pertain, and are not necessary, to the issues in question." *In re Shannopin Mining Co.*, 2002 WL 31002883, at *28 (W.D. Pa. Jul. 25, 2002). Scandalous allegations "cast[s] a derogatory light on someone, use[s] repulsive language, or detract[s] from the dignity of the court." *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988). This Court recently provided a recitation of applicable standards for deciding motions to strike:

> "Motions to strike are decided on the pleadings alone, and should not be granted unless the relevant insufficiency is 'clearly apparent.'" *Thomas v. Keystone Real Estate Grp.*, No. 14-cv-00543, 2015 WL 1471273, at *6 (M.D. Pa. Mar. 31, 2015) (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)). Therefore, as a general rule, motions to strike are disfavored, and "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the

6

> controversy and may cause some significant form of prejudice to one of the parties to the action." *See Mifflinburg Tel., Inc. v. Criswell*, 80 F. Supp. 3d 566, 572 (M.D. Pa. 2015) (citations omitted)

*State Farm Fire & Cas. Co. v. Katz*, 2:23-CV-00912-MJH, 2024 WL 4443991, at *3 (W.D. Pa. Oct. 8, 2024). "Even when challenged materials meet the definitions in [Fed. R. Civ. P.] 12(f), a motion will not be granted in the absence of clear prejudice to the adverse party." *Jenkins v. Veney*, No. CV 23-954, 2023 WL 4295824, at *1 (W.D. Pa. June 30, 2023).

### D. Discussion

#### 1. Equal Pay Act

Plaintiff alleges Defendants have violated the federal Equal Pay Act, 29 U.S.C. § 206 *et seq.*, (EPA) because Defendants paid her a lower salary than was paid to a male performing the same duties and with less seniority. Defendants contend that Plaintiff's claim is time barred. ECF No. 27 at 6. Violations of the EPA are subject to a two-year statute of limitations, unless the violation is shown to be willful, in which case the statute of limitations is extended to three years. 29 U.S.C. § 255. Plaintiff pleads that the violation was willful. ECF No. 24 ¶¶ 128, 214. The limitations period is also three years for continuing violations. *Id.* at 842. *See also Kravitz v. Centennial Sch. Dist.*, No. 2:23-CV-00888, 2023 WL 4980936, at *4 (E.D. Pa. Aug. 3, 2023) (The statute of limitations for an EPA claim begins to run on the date that the plaintiff received her last allegedly discriminatory paycheck.) Plaintiff may have filed within three years, a fact which can be determined by establishing, through discovery, the date that the plaintiff received her last allegedly discriminatory paycheck.

We find, too, that Plaintiff has pled a substantive case under the Equal Pay Act sufficient to survive a motion to dismiss, having listed her title, duties, and responsibilities and alleging that Mercuri, a man, was paid more than she was for the same work. ECF No. 24 ¶¶ 17, 30 – 33.

*Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000) ("employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions."). We recommend that the Equal Pay Act claim proceed to discovery and suggest an inquiry into the statute of limitations on a more fully developed record pinpointing more precisely the date of the accrual of the cause of action.

### 2. Retaliation

Defendants argue that the retaliation claim should be dismissed for Plaintiff's failure to exhaust her administrative remedies under Title VII and the PHRA. We agree. Plaintiff's EEOC charge, through the PHRC, alleged gender discrimination and equal pay violations, ECF No. 27-1, but did not allege retaliation or set forth facts suggesting retaliation, which are required for exhaustion. *See Barzanty v. Verizon PA, Inc.,* 361 F. App'x 411 (3d Cir. 2010) (a claim not included in the formal charge is not exhausted). *See also Yarnall v. Philadelphia Sch. Dist.*, No. CIV.A. 11-3130, 2013 WL 1389757, at *2 (E.D. Pa. Apr. 4, 2013), on reconsideration in part, No. CIV.A. 11-3130, 2013 WL 5525297 (E.D. Pa. Oct. 7, 2013) ("By failing to include . . . retaliation claims in their formal charge, Plaintiffs have failed to exhaust these claims.") Plaintiff concedes that the retaliation box is not checked on the EEOC charge, though "sex" and "other/equal pay" are. We disagree with Plaintiff's assertion that retaliation falls within the EEOC charge and with Plaintiff's assertion that ongoing retaliation is material to the exhaustion inquiry. We recommend that the retaliation claim be dismissed for failure to exhaust administrative remedies and need not, therefore, discuss the substance of a retaliation claim.

### 3. Gender Discrimination

The parties agree on the elements required for Plaintiff to establish a *prima facie* case of discrimination:

> (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances could give rise to an inference of unlawful discrimination. Such an inference may be drawn if the plaintiff identifies "a similarly situated individual outside of the protected class, who engaged in the same conduct but was treated more favorably."

*Cooper v. Thomas Jefferson Univ. Hosp.*, 743 F. App'x 499, 502 (3d Cir. 2018). We agree with Plaintiff, however, that to survive a motion to dismiss, she need not make out a *prima facie* case, but rather that the "post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (internal citations omitted). Plaintiff, a woman Behavior Scientist, alleges that she is a member of a protected class and qualified for the position. ECF No. 24 ¶¶ 7, 17-18. She alleges that she suffered adverse employment actions when she was paid less than a comparable male colleague, *id*. ¶¶ 30, 57-58, 128, when she was assigned additional responsibilities after engaging in protected activity, *id*. ¶ 61-67, and when she was removed from a faculty retreat *id*. ¶ 114-117. Plaintiff alleges that non-members of the protected class were treated more favorably under circumstances giving rise to an inference of discrimination. As but one example, Plaintiff offers that female residents, physicians, and staff were subjected to skits degrading women despite the supervisor having been put on notice, *id*. ¶ 21-25, while male physicians, residents, and staff were not. *Id*. ¶ 26. The pay disparity with Mercuri is another example. *Id*. ¶¶ 17, 30 – 33. We agree with Plaintiff that, in light of the further evidence of discrimination that she has supplied, her ability to perform her job duties and garner positive reviews do not contradict that she may have suffered adverse employment action. *See Newman v. Point Park Univ.*, No. 2:20-CV-00204, 2022 WL 969601, at *24 (W.D. Pa. Mar. 31, 2022) (plaintiff's ability to perform her job duties satisfactorily, *without more evidence of*

*discrimination*, does not violate Title VII). We find that Plaintiff has pled enough facts to make it likely that discovery will solidify the necessary elements and recommend that the gender discrimination claim be permitted to proceed to discovery.

### 4. Hostile Work Environment

Though Defendants so urge, at this point we decline to find Plaintiff's hostile work environment claim time barred and recommend that discovery be allowed on the matter. The allegations in her Complaint sufficiently allege that this claim constitutes a "continuing violation." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165–66 (3d Cir. 2013) (To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period.) *See also Morgan*, 536 U.S. at 105 (court may consider "entire scope of a hostile work environment claim ... so long as any act contributing to that hostile environment takes place within the statutory time period"). Plaintiff's allegation of a continuing violation relies not only upon demeaning skits ending in 2019, but also upon acts happening as late as 2021 and 2022, including a supervisor's joke about "one-night stands," *id.* ¶141, and derision directed at Plaintiff for hosting an antidiscrimination event. *id.* ¶¶162-165, 167.

Next, to establish a *prima facie* case of hostile work environment:

> the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability.

*Id.* Plaintiff has alleged intentional sex-based discrimination and describes pervasive hostility toward women from each Defendant. Among the incidents she describes are: 1) derogatory skits continuing from 2015 through 2019, despite several complaints about their offensiveness, ECF

10

No. 24 ¶¶ 19, 28-29; 2) pay inequity relative to a male in her same position, *id.* ¶¶ 30, 128; 3) remarks such as Beckstead's public remark, after his assertion that women do not act to solve problems but are typically overemotional and ruminate, "Oops, I forgot that the hashtag #MeToo police is in the room"; *id.* ¶¶ 42-43, Beckstead's mocking a patient as young and stupid for becoming pregnant from a sexual assault, *id.* ¶ 92, Beckstead's 2021 joke about "one-night stands." *id.* ¶ 141, and Beckstead and Hines referring to women who reported sexual harassment as "a Lipka" or "Lipka-esque" (after a woman medical resident who reported harassment at the workplace), *id.* ¶¶ 79-80; 4) women employees' fear of reporting sexual harassment, *id.* ¶ 89; 5) incidents including a menstrual pad covered in ketchup placed in the office, *id.* ¶ 85; and 6) Beckstead's persistent failure to address the complaints presented to him about the hostile work environment, *id.* ¶¶ 102, 107-8. Plaintiff claims that she found the described discriminatory acts "degrading, demeaning, and harassing," ECF 24 ¶ 21, that she was "extremely upset," *id.* ¶ 25, and suffered by being paid less unfairly, *id.* ¶¶ 33- 34, 37-38. All of this contributed to Plaintiff suffering from exhaustion, *id.* ¶ 21, having to work long hours to keep up with the extra duties that had been put upon her and functioning on little sleep. *Id*. ¶¶ 69-70. She sought out a therapist who found that she had been traumatized and exhausted by Defendants' actions and recommended that she leave her position, though as the sole support of herself and her children, she remained. *Id*. ¶¶ 71-73. This recitation is sufficient to plead that the alleged discrimination detrimentally affected Plaintiff and also, sufficient to raise the possibility an objectively reasonable person in Plaintiff's place might be detrimentally affected by the alleged incidents. *See Mandel*, 706 F.3d at 168. So, too, we find that Plaintiff's identification of Beckstead as an employee of UPMC, and that he in turn was her supervisor, *id.* ¶¶ 11-14, sufficient at this stage to establish the possibility

of respondeat superior liability.[1]  Thus, we recommend that the hostile work environment claim proceed to discovery.

   **5. Strike Allegations**

Defendants assert that the court should strike "the numerous allegations. . . in the Amended complaint that are irrelevant, immaterial, impertinent, scandalous" and without an important relationship to the claim.  ECF No. 27 at 18.  The following are some of the many allegations that they wish to see stricken:  the skits portraying women in a demeaning light, the menstrual pad covered in ketchup, and the bullying of female interns and staff, as well as some allegations that relate to race, sexual orientation, and disability discrimination.  *Id*. at 18 – 20.  Plaintiff responds by stating each of the examples Defendants provide "directly relate to [her] claims regarding . . . gender discrimination . . . , hostile work environment. . ., or facts that give rise to an inference that Defendant retaliated.[2]  ECF No. 31 at 15.  Customarily, when a party requests the removal of particular statements complaint, it is accomplished by a Rule 12(f) motion to strike.  *See C.M. by & through McMillen v. Am. Honda Motor Co*., No. 3:23-CV-00119, 2024 WL 1382760, at *10–11 (W.D. Pa. Apr. 1, 2024).  Though Defendants fail to reference Federal Rule of Civil Procedure 12(f), the Court will nevertheless construe argument (g) of the Motion to Dismiss as a Motion to Strike the complained-of material.  *See id.*

The Court of Appeals for the Third Circuit has "repeatedly stated [the] preference that cases be disposed of on the merits whenever practicable."  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181

---

[1] Because Plaintiff's claims of discrimination and hostile environment may proceed against both Defendants, we need not address Defendants' argument (e), Brief in Support of Defendants' Motion to Dismiss, ECF No. 27 at 17, that we should dismiss claims against Beckstead as an aider and abettor.  Nor will we now decide the appropriateness of punitive damages, *see id.* at 17-18, but will do so, when necessary, upon a more fully developed record.

[2] We have recommended above that Plaintiff's claim for retaliation be dismissed for failure to exhaust administrative remedies.

(3d Cir. 1984). On that score, the Court must be "mindful of the admonition that motions to strike under Rule 12(f) are highly disfavored," *Hadek Protective Sys. B.V. v. Ergon Asphalt & Emulsions, Inc.*, No. 2:22-cv-01421, 2023 WL 7002567, at *12 (W.D. Pa. Oct. 24, 2023); *see also C.M., supra.* and *Wirt v. Bon-Ton Stores, Inc.*, 134 F. Supp. 3d 852, 857 (M.D. Pa. 2015) ("[d]istrict courts possess great discretion in disposing of a motion to strike."). Keeping in mind that motions to strike under Rule 12(f) are highly disfavored and that we possess great discretion in a motion to strike, *see C.M. supra.,* we cannot recommend that the objected to allegations be stricken. For one reason, the allegations objected to do not rise to the level of "scandalous" matter. *See Thomas v. Keystone Real Est. Grp. LP*, 4:14-CV-00543, 2015 WL 1471273, at *7 (M.D. Pa. Mar. 31, 2015) (striking from plaintiff's complaint paragraphs alleging criminal drug use as immaterial and prejudicial); *id.* at *8 (striking as scandalous plaintiff's motion and accompanying submissions where "[t]he prose in the documents [wa]s riddled with hyperbolic characterizations and profane language that ha[d] no relation whatsoever" to matters before the court); *id.* ("submission of irrelevant scandalous material on the public record . . . is an affront" to the Court's dignity). *Compare Wermann v. Excel Dentistry, P.C.*, 13-7028, 2014 WL 846723, at *6 (S.D.N.Y. Feb. 25, 2014) (declining to strike profane and sexually explicit language attributed to defendant where they were material to plaintiff's gender discrimination claims). We are mindful that motions to strike should be denied unless the objected to statements *both* (1) have "no possible relation or logical connection to the subject matter of the controversy; *and* (2) "may cause some *significant form of prejudice* to one of the parties to the action." *State Farm supra. (emphasis supplied).* As to the first prong, we cannot conclude definitively that the objected to allegations are immaterial to the remaining claims, even those that tend to show retaliation. As to the second, Defendants have made no claim at all that the continued inclusion of the objected to statements would cause

any prejudice, let alone significant prejudice. Accordingly, if Defendants intend its request to sound in a Rule 12(f) motion to strike, it is respectfully recommended that the Court deny that request.

### III. **CONCLUSION**

For the above reasons, it is respectfully recommended that Defendants' Motion to Dismiss be granted in part and denied in part: It is recommended that the Motion be GRANTED as to the Retaliation Claim and DENIED as to the Equal Pay Act Claim, the Gender Discrimination Claim, and the Hostile Work Environment Claim. In addition, to the extent that Defendants have moved to strike parts of the Amended Complaint, we recommend that request be DENIED.

In accordance with the Federal Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file written objections thereto. Any party opposing such objections have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will waive any appellate rights.

Dated:  April 8, 2025

                                           s/ Kezia O. L. Taylor_____
                                           Kezia O. L. Taylor
                                           United States Magistrate Judge